# AFFIDAVIT

I, Brandon Hope, being sworn, depose and state as follows:

1. I am a Special Agent with the United States Department of Justice Drug Enforcement Administration (DEA) and have been since November 2014. Prior to being employed by DEA, I was a police officer for approximately four years with Prince William County (Virginia) Police Department. I am currently assigned to the DEA's Burlington, Vermont Resident Office (BRO). I have participated in investigations relating specifically to the possession and distribution of heroin and other drugs. I have also participated in various aspects of investigatory work including several narcotics-related arrests and execution of many narcotics-related search warrants. I have written affidavits in support of search and arrest warrants. I have also interviewed defendants regarding various criminal activities, including narcotics trafficking. These interviews have included discussions of the use and meaning of code words in the sales and distribution of controlled substances. Through my training, education, and experience, I have become familiar with the manner and methods of illegal narcotics distribution.

2. This affidavit is submitted to show probable cause to believe that on or about April 6, 2016, Frankie HOOVER committed the offense of possession with intent to distribute heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and Earnest BROWN committed the offense of possession with intent to distribute cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

3. The facts in this affidavit come from my personal observations and knowledge, my training and experience, and information obtained from other agents and law enforcement personnel. This affidavit is intended to show merely that there is probable cause for the offenses charged, and does not set forth all of my knowledge about this matter.

4. On April 6, 2016, in response to information obtained from a Burlington Police Department (BPD) Confidential Source (CS), surveillance was established in the area of 435 Dorset Street, South Burlington, Vermont.

5. The CS has admitted to having an addiction to heroin and has been arrested for three counts of sale of heroin. The CS was not given any promises or predictions that would result from the CS's cooperation in relation to the CS's pending charges. The CS advised it would cooperate with law enforcement in the hopes of receiving consideration on the pending charges. A criminal record check revealed the CS has no previous criminal convictions.

6. On the afternoon of April 6, 2016, members of DEA along with BPD utilized the BPD CS to conduct a controlled purchase of heroin from an individual. As set forth below, law enforcement believes this individual is Frankie HOOVER and the individual will be referred to as HOOVER throughout this affidavit.

7. The CS arranged the deal via text message. Through these communications, HOOVER and the CS agreed that the CS would pick up HOOVER in the CS' vehicle. The CS understood he/she was to meet HOOVER in the area of 435 Dorset Street in South Burlington, Vermont.

8. The CS was provided with an audio recording and transmitting device, which was hidden on his/her person. The CS' vehicle was also outfitted with a hidden video recording device. Prior to the CS picking HOOVER up, law enforcement provided CS with pre-recorded law enforcements funds and instructed CS to purchase heroin from HOOVER if possible.

9. In anticipation of the meeting, law enforcement established surveillance in the area of 435 Dorset Street. Agents saw the CS arrive at 435 Dorset Street and saw HOOVER enter the front passenger seat of the CS's vehicle.

10. The CS drove its vehicle north on Dorset Street and turned on to Garden Street, where surveillance saw a female (hereafter Female #1) get into the CS' vehicle. The CS circled the area of Garden Street for a short time before Female #1 exited the vehicle and walked away.

11. Law enforcement agents surveilled the CS' vehicle as the vehicle traveled to Northern Lights store at 75 Main Street, Burlington. Agents saw the CS exit his/her vehicle and enter the store, while HOOVER remained inside. Based on my work as a DEA agent, I know that Northern Lights is a store that sells, among other things, drug related paraphernalia, including bags that are commonly used to hold controlled substances such as heroin.

12. After the CS returned to his/her vehicle, the CS drove back to the area of 435 Dorset Street where agents saw HOOVER exit the vehicle and enter 435 Dorset Street.

13. The CS was surveilled back to a predetermined meeting location where law enforcement officers met with the CS and debriefed him/her. During the course of the debriefing, the CS explained that the CS had provided the male in the CS's vehicle with $200 of law enforcement funds in exchange for two bundles of heroin. A bundle of heroin is ten individual use bags of heroin. The CS told law enforcement that this drug deal occurred when he/she was alone in the car with the male.

14. The CS provided law enforcement the two bundles of suspected heroin. One bundle contained bags with a black design and white skulls on it with an off-white substance inside. The other bundle contained bags with a black clubs design on them, containing an off-white substance inside. The CS and CS vehicle had been searched by investigators prior to and following the interaction with HOOVER. Neither the CS nor the CS vehicle had contraband or other large amounts of currency. The substance purchased by the CS was field tested and gave a presumptive positive for heroin.

15. Law enforcement has reviewed portions of the audio and visual recordings obtained during the CS' interaction with HOOVER in the car. Although law enforcement has not yet had the opportunity to review this evidence in detail, the portions reviewed thus far at least partially corroborate the CS' account of what occurred.

16. The CS also told law enforcement that the male had provided the CS money to purchase bags at the Northern Lights store. The CS purchased the bags, but had forgotten to give them to the male and the CS still had them with him/her. The CS provided the bags to law enforcement and I have reviewed a photograph of them. Based on my training and experience, these bags are consistent with the type used to hold individual use quantities of heroin.

17. Following the debriefing, law enforcement instructed the CS to return to 435 Dorset Street and provide HOOVER with the bags the CS had purchased at Northern Lights. Again, the CS was outfitted with an audio recording device and a video recording device was secreted in his/her vehicle. The CS performed this task at 435 Dorset Street and then left that location alone. Law enforcement continued to surveil 435 Dorset Street.

18. At approximately the same time, DEA requested that uniformed officers approach Female #1. After they did so, first responders brought Female #1 to the hospital due to a suspected drug overdose. At the hospital, Female #1 spoke with law enforcement. In essence, she admitted that she was a heroin addict and that prior to her encounter with emergency personnel, she had injected heroin that she had just purchased. Female #1 refused to identify her supplier.

19. Law enforcement also spoke to Female #1's boyfriend, who had been with her during the heroin overdose. Female #1's boyfriend stated that the bags of heroin Female #1 had purchased had black club stamps on them. This description is consistent with the markings on some of the bags CS had purchased from HOOVER.

20. Law enforcement agents conducting surveillance at 435 Dorset Street saw a vehicle pick up HOOVER. Law enforcement followed this vehicle until it reached the parking lot of Al's French Fries, a restaurant in South Burlington.

21. In the restaurant parking lot, agents saw another male, later identified to be Earnest BROWN, exit the vehicle carrying HOOVER. BROWN entered Al's French Fries, while HOOVER remained vehicle.

22. At this point, a second vehicle arrived in the parking lot and a male, exited this vehicle and got into HOOVER's vehicle. After a few minutes, this male got out of HOOVER's vehicle and law enforcement took HOOVER into custody.

23. HOOVER was searched incident to arrest and a quantity of suspected heroin was found on his person. This substance subsequently field tested positive for heroin and weighed approximately 32 grams including packaging. Based on my training and experience, I believe this to be a distribution quantity of heroin.

24. The male who had entered HOOVER's vehicle immediately before HOOVER's arrest spoke with law enforcement and admitted that he had just purchased heroin from HOOVER. The male turned over a quantity of heroin to law enforcement.

25. Law enforcement officers involved in HOOVER's arrest identified him as the male who had met with the CS 435 Dorset Street earlier in the operation. HOOVER identified himself to law enforcement as Frankie Hoover.

26. At approximately the same time HOOVER was being taken into custody, law enforcement approached BROWN inside Al's French Fries, identified themselves as law enforcement officers, placed BROWN on the ground, and placed BROWN in handcuffs for officer safety. This occurred in a restaurant with members of the public close by. While BROWN was being placed in handcuffs, a DEA agent patted the exterior of his clothing and felt multiple hard objects in BROWN's pants pocket and jacket pocket. The agent removed these objects.

27. Among the hard objects the agent removed were bags that contained a substance that ultimately field tested positive for cocaine base. The cocaine base weighed out at approximately 42.3 grams, including packaging. Based on my training and experience, I believe this to be a distribution quantity of cocaine base.

28. Although he at first provided a false name to law enforcement, BROWN ultimately identified himself as Earnest BROWN.

Dated at Burlington, in the District of Vermont, this 7th day of April, 2016.

Brandon Hope, Special Agent
U.S. Drug Enforcement Administration

Sworn to and subscribed before me this 7th day of April, 2016.

JOHN M. CONROY
United States Magistrate Judge